

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

**GERALD C. MANN**



ATTORNEY GENERAL

Dr. George W. Cox
State Health Officer
State Board of Health
Austin, Texas

Dear Sir:

Opinion No. O-4935
Re: Should deductions be made
from the salaries of employees
of the Salt Water Control
office for Social Security
purposes?

     Your request for an opinion as to whether a stenographer and clerk employed in the Tyler field office of the Governing Committee for Salt Water Control set up in compliance with an agreement between the plaintiffs and the defendants in the case of the State of Texas vs. Sun Oil Company, No. 46,545-F in the District Court of Dallas County, Texas, 116th Judicial District, is subject to Federal Social Security taxes, has been received.

     The language of the plan submitted pursuant to the agreement setting up the governing committee is as follows:

     "The plaintiff State of Texas is represented by the Attorney General's Department, the State Board of Health, the Board of Water Engineers and the State Game, Fish & Oyster Commission. These four departments will constitute a governing committee to supervise and enforce the administration of the agreement on behalf of the plaintiff. Dr. George W. Cox, State Health Officer, will serve as chairman of the committee, and he shall have the responsibility of administering the plan under the direction of the committee. All plans and reports required by this instrument to be filed with the plaintiff shall bear an identification file No. AG 585, and shall be forwarded to the State Health Officer, Austin, Texas.

     The field office was established at Tyler in compliance with the provisions of the plan under the direction of a field engineer for the purpose of administering the plan. The general terms of the plan agreed upon are as follows:

"(1) To provide adequate storage in pits or other containers, so constructed as to prevent seepage such as would result in the pollution of public waters.

"(2) To contract with salt water holding companies or conservation districts, which have adequate and approved storage facilities for handling the salt water produced by the discharging wells, provided these facilties conform to the requirements and objectives of this instrument; or

"(3) To provide injection wells adequate in capacity to dispose of the salt water produced on their respective leases and with adequate impervious storage capacity to hold the salt water during necessary shutdowns.

"(4) To employ any other method or combination of methods to effect the objectives and intendments of this instrument."

With this preliminary sketch and your letter, which we quote below as a basis of the facts, we have reached the conclusion that this employee is not subject to Federal Social Security tax. We quote your letter as follows:

"Mrs. Katherine Drumwright, nee Williams, has been employed as stenographer and clerk in the Tyler field office of Salt Water Control under the Governing Committee for about 11 or 12 months at a salary of $112.50 per month. During this time no deductions have been made from her salary for Social Security.

"The funds from which her salary is paid are derived from fees collected from oil operators, defendants in the above named cause. These fees are paid into the treasury of the 116th District Court, Dallas County, Texas, at a rate of $1.50 per well that is producing 5 per cent or more of salt water.

"The budget of the field office is fixed by the Governing Committee on Salt Water Control composed of Dr. George W. Cox, State Health Officer, as Chairman, and Honorable Gerald C. Mann, Attorney General of Texas, Mr. C. S. Clark, Chairman, State Board of Water Engineers, and Mr. William J. Tucker, Executive- Secretary, Game, Fish & Oyster Commission. When the budget is fixed, it is transmitted to the Judge of the 116th District Court for approval, and if it is approved by him an Order is directed to the Clerk of the court to pay the amount of the monthly budget to the engineer in charge of the field office.

"When these funds are received by the engineer
from the Clerk of the court he deposits them in a local
bank to his own credit and draws checks against the
account for payment of salaries and other office and
operating expenses. * * *"

Every person is an employer under Title 42-Sub-Title VIII,
Vol. 40-42, U.S.C.A. of the Social Security Act with which we are here
concerned, if he employs one or more employees, but it does not follow
that all services performed for the employer are subject to tax. Certain
services are specifically exempt under the Social Security Act. We need
here be concerned with only one of these exceptions, for unless this
employee falls within the purview of this exception, her employment and
services is subject to the Act, and, therefore, taxable. None of the
other exceptions expressed in the Act could possible have any application.
This exception is as follows:

"Service performed in the employ of a state, a political
subdivision thereof, or an instrumentality of one or more
states or political subdivisions." Title 42-Sub-section VIII,
1011 U.S.C.A., Vols. 40-42, page 239.

If the service of the stenographer and clerk is performed in
the employ of the state, or an instrumentality thereof, her service is
specifically exempt under the provisions of the Act noted above and need
not be reported. She is, in our opinion, an employee of an instrumentality
of the state; namely, the Governing Committee on Salt Water Control com-
posed of the Attorney General's Department, the State Board of Health,
the Board of Water Engineers and the State Game, Fish & Oyster Commission,
as provided in the plan under the heading of "Governing Committee". You
are constituted, under the plan, Chairman of the Committee and vested with
the responsibility of administering the plan under the direction of the
Committee. The Attorney General's Department is established by the Consti-
tution, and his office is, therefore, a constitutional office. The State
Board of Health, (Art. 4415A, Vernon's Revised Civil Statutes), the
Board of Water Engineers, (Art. 7477, 7488, Vernon's Revised Civil Statutes),
and the State Game, Fish & Oyster Commission, (Art. 4016-4018, Vernon's
Revised Civil Statutes), are created and their duties and activities are
prescribed by statute. The State Board of Health, the Board of Water
Engineers and the State Game, Fish & Oyster Commission are all
appointed by the Governor and confirmed by the Senate, and you,
as State Health Officer, are, of course, appointed by a majority
vote of the State Board of Health. The Attorney General is the legal
representative of the State in all litigation in which the state is a
party in connection with the administration of the affairs of these
state departments, parties to the plan. We do not deem it necessary to
cover in detail the work and activities of these various departments to
support the statement that they are instrumentalities of the state. Article
4444 of Vernon's Revised Civil Statutes has a direct bearing upon the work
performed by the State Board of Health and the Game, Fish & Oyster Com-
mission in connection with pollution of public bodies of water. It

reads as follows:

"No person, firm or corporation, private or municipal, shall pollute any water course or other public body of water, by throwing, casting or depositing or causing to be thrown, cast or deposited any crude petroleum, oil or other like substance therein, or pollute any water course, or other public body of water from which water is taken for the uses of farm livestock, drinking and domestic purposes, in this State, by the discharge, directly or indirectly, of any sewage or unclean water or unclean or polluting matter or thing therein, or in such proximity thereto that it will probably reach and pollute the waters of such water course or other public body of water from which water is taken, for said uses. Drain ditches, where waste oil finds its way into water courses or public bodies of water, shall be equipped with traps of sufficient capacity to arrest the flow of oil. Insofar as concerns the protection of fish and oysters, the Game, Fish & Oyster Commissioner or his deputies, may have jurisdiction in the enforcement hereof. * * * Upon the conviction of any person for violating this law, the court or judge thereof in which such conviction is had, shall issue a writ of injunction enjoining and restraining the person or corporation responsible for such pollution. For a violation of such injunction, the said court and the judge thereof shall have the power of fine and imprisonment as for contempt of court within the limits prescribed by law in other cases, and this remedy by injunction and punishment for violation thereof shall be cumulative of the fine imposed. The State Board of Health shall enforce the provisions of this article. * * *"

We do not quote this provision of the statute upon the assumption you are not familiar with it, but as an aid in support of our conclusion. The prevention of pollution of sources of water supply such as rivers, lakes, canals, reservoirs, etc., is of vital interest to the public welfare and health of the state and, as will be observed from Article 4444, the control and prevention thereof is especially delegated to your department. It is true that the salary of this employee is not paid from state funds, but by the operators in the field upon a prorate basis, the details of which are set out in your letter. But this, in our opinion, is not a controlling factor. The Committee is a feasible and convenient instrumentality to accomplish a public service. No one derives any private or personal benefit from its activities. The operators exercise no control whatsoever over the operations of the office or its employees. The Federal Social Security Board has ruled in a case in which the Licensed Commission of a city, stationed police officers at a place of amusement, fixing the remuneration for the services of the

officers which was paid by the amusement company, that such policemen
are employees of the city and are exempt under the Social Security
Act. They were subject to the control of the Police Department of the
city not only as regards the results to be accomplished, but also as to
the details and means by which the results were to be accomplished.
The fact that such officers were paid by the amusement company was held
not sufficient to constitute them employees of the company. (Opinion
Social Security Tax Division, Bureau of Internal Revenue, 327).

In a case involving the employment of utility inspectors where
the utilities are required under their franchise from the city to pay
for the inspection of all their construction work, and where the inspectors,
though paid by the utility are appointed by the mayor and subject to the
control of the city, it was held that such inspectors were exempt under the
statute, (Opinion, Social Security Tax Division, Bureau of Internal
Revenue, 339).

In a case involving instructors teaching classes in industrial
plants under the Ohio Vocational Education System (Established under the
Smith-Hughes Act), the instructors were former employees of the company
and were recommended by it but in this work they were held to be employed
by the Board of Education and not by the company. The Board controlled
their services and had the sole right to discharge them if their services
were unsatisfactory. The Board fixed the salary, although the company
paid half of such salary. The ruling of the Social Security Board in this
instance was that the Board of Education was an <u>instrumentality</u> of the
State of Ohio.

There has been little judicial determination of this question,
hence we have had to rely mainly upon rulings of the Social Security Board
as you will note above. One case, however, has come under our observation,
not in all respects parallel to the facts here under consideration, but
we think with enough analogy to be helpful. This is the case of Gayne,
Collector of Internal Revenue vs. Brush, in re Cullen Hardware Corporation.
30 Federal Supplement, page 714. The Cullen Hardware Corporation was
adjudged a bankrupt upon an involuntary petition filed by its creditors.
Larkin M. Brush was appointed by the Referee in Bankruptcy trustee and he
duly qualified as such. Miss Isabell E. Shea, a former employee of the
Cullen Hardware Corporation, was by permission of the Court, engaged in a
clerical capacity to assist the trustee in collecting the accounts. Her
wages were paid out of funds belonging to the bankrupt estate in the hands
of the trustee. The collector of Internal Revenue filed with the Referee
in Bankruptcy a claim for taxes on account of the employment of Mrs. Shea.
The Court ruled that the Clerk's salary was exempt under the Social Security
Act since the trustee was an instrumentality of the United States, the
Clerk employed to help him was likewise/exempt.

The Social Security Tax Division, in Opinion No. 127, found in Unemployment Compensation Commission Service, Volume 3, No. 2, April 15, 1939, page 124, ruled that the Lower Colorado River Authority in this state is an instrumentality of the State of Texas within the meaning of the exceptions expressed in the Section of the Act, supra, that neither the Lower Colorado River authority or its employees were subject to the tax imposed by the Social Security Act. True, the Colorado River Authority is created by a separate act of the Legislature, and the compensation of the officers and employees is paid from State funds, and is more clearly an instrumentality of the state than the Governing Committee, but no more definitely an instrumentality of the state than the State Board of Health, the State Board of Water Engineers and the State Game, Fish & Oyster Commission. We are of the opinion that this Governing Committee, acting within the scope of the work of all three of these instrumentalities of the state is itself none the less an instrumentality of the state.

In the instance we have here this stenographer and clerk is employed by the Committee through its Executive Secretary and director, the resident engineer, who is an employee of the State Board of Health. Her salary is fixed by the director and subject at all times to the Governing Committee under the direction of the Executive Director and could be discharged by the committee or the Executive Director at any time. In other words, the Governing Committee and Executive Director have complete and absolute control over this employee, and her services fall within the exemption expressed in the Social Security Act, if we are correct in our statement that this Governing Committee is an instrumentality of the state, and we think it is.

You understand that the opinion we here express is upon a Federal statute, and, therefore, is merely advisory.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By /s/ L. P. Lollar
L. P. Lollar
Assistant

LPL:nw-ds
APPROVED NOV 10, 1942
/s/ Grover Sellers
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED OPINION COMMITTEE
BY /s/ BWB CHAIRMAN